UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                 :

                          v.              :           **MEMORANDUM & ORDER**
                                          :           15-CR-0287-13 (WFK)
BRANDON GREENIDGE,                        :

                          Defendant.      :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 9, 2018, Brandon Greenidge pled guilty to Count Three of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Brandon Greenidge is hereby sentenced to 63 months of incarceration, 3 years of supervised release, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a seventy-five count Superseding Indictment against twenty-three defendants, including Brandon Greenidge ("Defendant"). *See* Superseding Indictment, ECF No. 48. On May 9, 2018, Defendant pleaded guilty to Count Three of the Superseding Indictment, which charged attempted murder-in-aid-of-racketeering/assault-in-aid-of-racketeering. *See* Plea Agreement ¶ 1, ECF No. 542.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.   Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the

Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born August 16, 1985, in Brooklyn, New York. Pre-Sentence Investigation Report ("PSR") ¶ 72, ECF No. 616. Defendant is one of two children born to the consensual union of Trevor Greenidge and Yvette Rouget and was raised in a middle-income household. *Id.* ¶¶ 72, 75. His parents separated when Defendant was approximately age thirteen. *Id.* ¶ 72. Following his parents' separation, Defendant saw his father infrequently. *Id.* ¶ 75. Defendant's mother remains supportive. *Id.* ¶ 73. Defendant has one brother and one half-brother, both of whom remain supportive. *Id.* ¶ 74.

Defendant has been romantically involved "on and off" since age sixteen with Ladonna Bird. *Id.* ¶ 76. Ms. Bird resides at the address of record, is healthy, and is employed as a

substitute New York City Department of Education public school teacher. *Id.* No children have been produced from this relationship. *Id.* Ms. Bird remains supportive. *Id.* ¶ 77.

From 2010 to 2014, Defendant was romantically involved with Chrisandra Harvey. *Id.* ¶ 78. The relationship ended because of "irreconcilable differences." *Id.* Ms. Harvey resides in Brooklyn, New York, is healthy, and is employed as an administrative assistant at Polaroid. *Id.* One child, a daughter age 7, was produced from this relationship. *Id.* Defendant's daughter resides with her mother in Brooklyn, New York, is healthy, and is enrolled in school. *Id.* Defendant noted to Pre-Trial Services that his daughter is very respectful and is on the honor roll at school. *Id.* He advised that he was the main financial supporter for his daughter, prior to his instant arrest and incarceration. *Id.* Defendant stated to Pre-Trial Services that Ms. Harvey is having difficulty supporting their child without his assistance. *Id.* He reported his mother is helping support his daughter in his absence, which his mother confirmed, adding she intends to retire early from her current employment to help care for the child. *Id.*

Defendant has resided in Brooklyn his entire life, but advised Pre-Trial services that he frequently visited Martinsburg, West Virginia to assist his ailing friend, Fulton Walker. *Id.* ¶ 80. Defendant took Mr. Walker to various medical appointments and surgeries. *Id.* Mr. Walker was a professional football player for the Miami Dolphins and Los Angeles Raiders, who died of a heart attack on October 12, 2016. *Id.*

Defendant advised that he left high school in eleventh grade, and he enrolled in a program at Touro to obtain his high school diploma and college degree simultaneously. *Id.* ¶ 91. He noted his high school counselor recommended the program, and Defendant took the required assessment test and passed it. Defendant was studying computer science and medical billing, and he withdrew after eighteen months because college was not for him. *Id.*

3

Prior to his incarceration, Defendant owned a "vintage sneaker" store. *Id.* ¶ 95. The store was only open for nine months prior to Defendant's arrest for the instant offense, and he had yet to turn a profit. *Id.* His inventory is currently in storage, and he intends to resume his business online once he is released from custody. *Id.* Prior to opening his store, he was self-employed selling sneakers. *Id.* ¶ 96. He was also previously employed at McDonalds and JFK Airport as a baggage handler. *Id.* ¶ 97.

Defendant has been incarcerated at the Metropolitan Detention Center (MDC) in Brooklyn, New York, since July 28, 2015. *Id.* ¶ 82; Def. Mem. at 4, ECF No. 657. The database indicates Defendant has taken the following educational courses: focus forward; basic fitness; SHU health; art program all units; health education program; yoga/stress reduction program; chess level 2; and anger management. PSR ¶ 82. In addition, the database indicates Defendant was a unit orderly, but he had no work assignment at the time of the PSR. *Id.* Defendant has several disciplinary infractions on his record, including: being in an unauthorized area; refusing to obey an order; failing to stand for count; possessing drugs/alcohol; and use of drugs/alcohol. *Id.*

Defendant is physically and mentally healthy. *Id.* ¶¶ 84, 88. Defendant advised he was assaulted by police officers in 2007 and sustained injuries to his risk, ribs, and elbows. *Id.* ¶ 84. Defendant was hospitalized for one week. *Id.* Defendant sued New York City and was awarded $7,500 in a settlement. *Id.*

Defendant advised he consumed alcohol once every two months, prior to his instant arrest. *Id.* ¶ 90. He stated that he first smoked marijuana at age fifteen, and he last smoked it at age twenty-one. *Id.* Defendant estimated that he shared a single marijuana cigarette with friends

4

once per month, during that time period. *Id.* He denied using any additional illicit substances. *Id.*

Defendant has thirteen prior arrests and seven convictions, including for: Assault in the Second Degree; Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree, Possession of Marijuana (less than 15 grams), Driving with a Suspended License; and Obstructing an Officer. *Id.* ¶¶ 55-61. Defendant has several pending local cases.

Regarding the instant offense, Defendant was a member of the Outlaw Gangsta Crips ("OGC") and Shoota Gang ("SG"). *Id.* ¶ 38. SG was an offshoot of the OGC which included members and associates of the OGC as well as members and associates of other gangs, including the Eight Trey, Bosses In Business, and the Bloods. *Id.* ¶¶ 4-5. Members and associates of the OGC have engaged in drug trafficking, fraud, firearms trafficking and promoting prostitution, and have committed acts of violence, including murder, attempted murder, robbery and assault, as well as other crimes. *Id.* The purposes of the OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in their victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 6.

On June 3, 2014, Defendant and co-defendants Connell Brogdon, Malik Campbell, Jeffrey Joseph and Stephon Rene surrounded John Doe #1 inside of the Big Boy Deli at 1452 Nostrand Avenue in Brooklyn, New York, and attempted to steal his chain necklace. *Id.* ¶ 11. During the confrontation, Campbell retrieved a gun from Brogdon's pocket and shot John Doe #1 multiple times. *Id.* The victim sustained serious bodily injury. *Id.* Defendant was also involved with a cocaine distribution conspiracy. *Id.* ¶¶ 16-17, 119. Defendant was arrested in

the Northern District of West Virginia on July 15, 2015, and he made no post-arrest statements. *Id.* ¶ 38.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant was involved in an extremely violent crime which resulted in serious injuries to the victim. The Court's sentence recognizes the seriousness of this offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity and encourages him to sever his ties to the OGC and the SG. More generally, the Court's sentence sends a message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains. Finally, it also considers Defendant's family support and his desire to be a present father for his daughter.

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3). He faces a maximum term of imprisonment of twenty years. *See* 18 U.S.C. § 1959(a)(3). Defendant also faces: a maximum term of supervised release of no more than three years, 18 U.S.C. § 3583(b); not less than one and no more than five years of

probation, 18 U.S.C. § 3561(c)(1); a maximum fine of $250,000.00, 18 U.S.C. § 3571(b); mandatory restitution, 18 U.S.C. § 3663A; and a special assessment of $100.00, 18 U.S.C. § 3013.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guideline § 2E1.3, with reference to § 2A2.1, applies to violations of 18 U.S.C. § 1959(a)(3). *See* United States Sentencing Commission, *Guidelines Manual*, § 2E1.3 (2018) ("USSG"). Both the Government and Probation Department agree that the base offense level should be determined by reference to U.S.S.G. § 2E1.3, which applies to violent crimes in aid of racketeering, and which directs that "the offense level applicable to the underlying crime or racketeering activity" should apply if it is greater than 12. U.S.S.G. § 2E1.3(a)(2). The Government and Probation Department further agree that the offense level should therefore be determined by U.S.S.G. § 2A2.1, which applies to assault with intent to commit murder and attempted murder. However, the Probation Department submits that the base offense level should be 33 because "the object of the offense would have constituted first degree murder," pursuant to U.S.S.G. § 2A2.1(a)(1), whereas the Government's estimate provides that the base offense level would be 27, which applies otherwise pursuant to U.S.S.G. § 2A2.1(a)(2).

Probation states,

> [T]he offense that the defendant plead guilty to . . . would have constituted first degree murder. Specifically, the defendant and his co-defendants attempted to steal the chain from the victim, and the victim was shot during this robbery attempt. If the victim had died as a result of his injuries, the instant offense would have

> constituted a felony murder, which falls under the category of a first degree murder. Therefore, the guideline calculation in the PSR is accurately calculated and it remains unchanged.

PSR Addendum at 1, ECF No. 647.

The Government states,

> Because Greenidge did not participate in the shooting of John Doe #1 – as distinct from the robbery and assault of John Doe #1 – and because the government cannot prove that the defendant knew that Campbell would shoot John Doe #1, the government does not ask the Court to apply the base offense level for first degree murder. The offense level for "otherwise" participating in assault with intent to commit murder adequately reflects this defendant's role, and also serves to distinguish him from Brogdon and Campbell, who clearly intended that Campbell would shoot and kill John Doe #1. . . . As the Court is aware, the government estimated in its plea agreements that as to Brogdon and Campbell, the base offense level should be 33, not 27.

Gov't Mem. at 3-4 & n.1, ECF No. 656.

Both Probation and the Government agree that because the victim sustained serious bodily injury, two levels are added. USSG § 2A2.1(b)(1)(B). Additionally, Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level. USSG § 3E1.1(b). All parties agree Defendant should receive a three-point reduction for acceptance of responsibility. Furthermore, in Defendant's plea agreement, the Government estimated that the Defendant would receive a two-level reduction "for a global resolution pursuant to U.S.S.G. § 5K2.0 . . . only if the conditions set forth in Paragraph 7 [of the plea agreement] are satisfied." Plea Agreement ¶ 2. All parties agree Defendant should receive this two-point reduction. PSR ¶ 118; Gov't Mem. at 3.

Defendant's criminal convictions result in a subtotal criminal history score of one. PSR ¶ 62. This establishes a criminal history category of I. USSG Ch. 5, Part A.

Under Probation's calculation, Defendant's total adjusted offense level would be 30, which with a criminal history category of I, leads to a Guidelines imprisonment range of 97-121 months. PSR ¶ 118. Probation states a sentence of 97 months (or the low-end of the advisory guideline) is recommended. PSR Sentencing Recommendation at 1-2. While Probation noted Defendant's involvement in a cocaine trafficking conspiracy is grounds for upward variance from the range, it appears that 97 months is long enough to be sufficient, but not greater than necessary, to comply with the goals set forth in 18 U.S.C. 3553(a). Probation also notes Defendant's criminal history category substantially underrepresents the seriousness of Defendant's criminal history of the likelihood that he will commit other crimes. PSR Addendum at 2.

Under the Government's calculation, Defendant's total adjusted offense level would be 24, which with a criminal history category of I, leads to a Guidelines imprisonment range of 51-63 months. The Government seeks a sentence within that range.

The Defendant requests a below Guidelines sentence of 48 months, citing, *inter alia*, Defendant's daughter and his efforts to succeed as a business owner prior to his arrest. Def. Mem. at 1, ECF No. 657.

Per the Guidelines, Defendant may also be sentenced to a term of supervised release of one to three years, USSG § 5D1.2(a)(2); a fine of between $10,000.00 and $100,000.00 (for a total adjusted offense level of 24) or $15,000 and $150,000 (for a total adjusted offense level of 30), *id.* §§ 5E1.2(c)(3), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines further suggest Defendant is ineligible for probation. *Id.* § 5B1.1, n.2.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5). As discussed above, the Government and defense agree to an additional 2-level reduction in the guideline range, per Policy Statement 5K2.0. Additionally, Defendant was also involved in a cocaine distribution conspiracy. While this conduct could not be factored into the guideline calculation, it can be considered under 5K2.0.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). Restitution is mandatory in the fill amount of the victim's losses as determined by the Court. 18 U.S.C. § 3663A and 3664.

## CONCLUSION

A sentence of 63 months of incarceration, to be followed by 3 years of supervised release, restitution to be determined by the Court, and a $100.00 special assessment is

appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the Addendum thereto and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: January 18, 2019
      Brooklyn, New York